Andrew Rozynski (seeking *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708

John K. Buche (CA Bar No. 239477) (Local Counsel)
BUCHE & ASSOCIATES, P.C.
2029 Century Park E., Suite 400N
Los Angeles, CA 90067
Tel: (310) 593-4193
Fax: (858) 430-2426
jbuche@buchelaw.com

*Attorneys for Plaintiff Leiona Colbert Gregory*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| LEIONA COLBERT GREGORY,<br><br>                    *Plaintiff*,<br><br>        v.<br><br>LOMA LINDA UNIVERSITY MEDICAL CENTER,<br><br>                    *Defendant*. | **Civil Action No.: 5:21-cv-381**<br><br>**COMPLAINT** |

1

Plaintiff Leiona Colbert Gregory states her Complaint against Defendant Loma Linda University Medical Center based upon personal knowledge and information and belief:

## INTRODUCTION

1.      This case is all about access—access to information and health care services. As a deaf American, Ms. Gregory primarily communicates in American Sign Language or "ASL" for short. She requires an ASL interpreter to effectively communicate and participate in a medical setting.

2.      Language is the cornerstone of the patient-physician relationship. Indeed, "it is primarily through language that the physician works to establish rapport and trust. Good physician-patient communication is fundamental to good health care." E. McEwen & H. Anton-Culver, Journal of Family Practice, Vol. 26, No. 3:289–291, 291 (1988), https://bit.ly/2Fn3zLW.

3.      From February 10 to 13, 2020, Defendant's hospital assessed the condition of Ms. Gregory's gallbladder. She frequently requested an ASL interpreter, so she could fully understand and participate in her health care. But time and again, Defendant failed to provide ASL interpreters for Ms. Gregory to enjoy the same services that a hearing person would.

4.      For a hearing patient, effective communication provides better patient safety, better treatment adherence, and better health care outcomes.

5.      But Ms. Gregory's gallbladder was removed without her knowledge.

6.      To state the obvious, without equally effective communication, Ms. Gregory could not make informed health care choices. Instead, she experienced heightened anxiety throughout her treatment at Defendant's hospital. Defendant's actions and inactions caused her to be anxious because she was afraid of misunderstanding her treatment options.

2

7.      Thus, Defendant discriminated against Ms. Gregory by refusing to provide the ASL interpreters that she required to understand and participate in her health care.

8.      Based on Ms. Gregory's experience, it is evident that Defendant has failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Ms. Gregory brings this lawsuit to compel Defendant to cease its unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendant's health care services.

9.      Ms. Gregory brings this action seeking compensatory and punitive damages; declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress Defendant's unlawful discrimination against her on the basis of her disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51.

## THE PARTIES

10.     Plaintiff LEIONA COLBERT GREGORY brings this action as an individual residing in Barstow, California. She is a profoundly deaf individual who primarily communicates in American Sign Language. Ms. Gregory is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of state and federal civil rights laws.

11.     Defendant LOMA LINDA UNIVERSITY MEDICAL CENTER is a corporation doing business in the State of California in the County of San Bernardino at 11234 Anderson Street, Loma Linda, California 92354.

12.     Upon information and belief, Defendant is a recipient federal financial

assistance.

13.    Upon information and belief, Defendant receives Medicare and Medicaid reimbursements.

## JURISDICTION & VENUE

14.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 for Ms. Gregory's claims arising under the laws of the United States and supplemental jurisdiction under 28 U.S.C. § 1367 for Ms. Gregory's claims arising under state law.

15.    Venue is proper in this district under 28 U.S.C. § 1391(b) because (i) Defendant is a resident of this District, (ii) Defendant has sufficient contacts with this District to subject it to personal jurisdiction and had those contacts at the time this action is commenced, and (iii) the acts and omissions giving rise to this Complaint occurred within this District.

## STATEMENT OF FACTS

16.    Ms. Gregory is a profoundly deaf individual who communicates primarily in American Sign Language. She cannot effectively communicate by reading a person's lips.

17.    Some background on Deaf[1] culture is necessary to understand the balance of this case. American Sign Language, "the sixth most commonly used language in this country," is not a gestured form of English. "ASL is a mix of native signs and French sign language. Some words are finger-spelled, borrowed from English the same way that the words gourmet, roulette, and taco are borrowed from French and Spanish." And the

---

[1] "[T]he word deaf is written with either an uppercase or lower-case 'D.' When referring to the audiological condition of deafened people, deaf is written with a lower-case 'd.' An uppercase 'D' is used when writing about the Deaf culture, a group with which many prelingually deaf people affiliate themselves." D. Scheier, Barriers to Health Care for People with Hearing Loss: A Review of Literature, Journal of the New York State Nurses Association at 4, https://bit.ly/2QYg8T6.

---

*Leiona Colbert Gregory v. Loma Linda University Medical Center* – COMPLAINT

native signs derive from "hand shape, palm direction, placement of the hand on the body or within the signing space, movement, and non-manuals (facial expressions)." D. Scheier, Barriers to Health Care for People with Hearing Loss: A Review of Literature, Journal of the New York State Nurses Association at 6, https://bit.ly/2QYg8T6 (internal citations omitted).

18.    Unfortunately, "many physicians are reportedly unaware of Deaf culture and the health needs of deaf people. This may lead to assumptions and misconceptions about deafness that undermine professional health care. For example, practitioners often believe that lip reading/speech reading and note writing provide effective health communication. In reality, these are ineffective communication modalities for health care conversations. Deaf people who have practiced lip-reading/speech-reading for many years and who are familiar with spoken language are able to understand at best 30-45% of spoken English. Furthermore, note-writing is often constrained by deficits in health literacy and limited 'fund of information' deficits." A. Kuenburg, P. Fellinger, & J. Fellinger, Health Care Access Among Deaf People, Journal of Deaf Studies and Deaf Education, 2016, Vol. 21, No. 1:1–10, 2 (internal citations omitted), https://bit.ly/39GAPeZ.

19.    In short, Defendant frequently failed to provide Ms. Gregory with equally effective communication under state and federal law during her various admissions.

20.    For example, Plaintiff was admitted to Defendant's facility between February 10 to 13, 2020, and her gallbladder was removed without her knowledge.

21.    A nurse named Jamie Sanchez informed Plaintiff that she would undergo an assessment to see if her gallbladder needed to be removed—not that her gallbladder as going to be removed.

22.    Throughout her treatment, Ms. Gregory requested ASL interpreters.

23.    Defendant and its staff knew that Ms. Gregory is deaf and were aware that she made repeated requests for ASL interpreters.

5

24.     At times, Defendant's staff used note writing in English to communicate with him. Defendant "expect[s] deaf individuals to write notes in English that clearly express the thoughts or questions of the individual and to read lips perfectly. No other subset of Americans who use English as their second language are expected to do this . . . ." L. Harmer, Health Care Delivery and Deaf People: Practice, Problems, and Recommendations for Change, Journal of Deaf Studies and Deaf Education, 1999, Vol. 4, No. 2:71–110, at 96, https://bit.ly/2uA1qdB.

25.     At other times, Defendant used video remote interpreting ("VRI") equipment that either malfunctioned or failed to display an ASL interpreter. VRI is "an interpreting service that [should] use[] video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images." 28 C.F.R. § 36.104.

26.     In most instances, effective communication could not have taken place between Ms. Gregory and Defendant's staff without an ASL interpreter.

27.     Overall, Defendant's discrimination against Ms. Gregory caused her to emotional distress, including stress, anxiety, and frustration.

28.     Defendant knew or should have known of its obligation as a health care provider under state and federal antidiscrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including the provision of ASL interpreters to ensure effective communication with deaf individuals.

29.     Defendant and its staff knew or should have known that their actions and inactions created an unreasonable risk of causing Ms. Gregory greater levels of emotional distress than a hearing person would be expected to experience.

30.     Nevertheless, Defendant prevented Ms. Gregory from benefitting from its services by failing to provide the ASL interpreters necessary for her to effectively communicate and participate in a health care setting.

*Leiona Colbert Gregory v. Loma Linda University Medical Center* – COMPLAINT

31.     In doing so, Defendant intentionally discriminated against Ms. Gregory and acted with deliberate indifference to her federally protected rights.

32.     Defendant's wrongful and intentional discrimination against Ms. Gregory on the basis of her disability is reflected by Defendant's failure to train employees and promulgate policies of non-discrimination against deaf individuals.

33.     As a result of Defendant's failure to ensure effective communication with Ms. Gregory, she received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

34.     Ms. Gregory is entitled to equal access to services offered by Defendant as are enjoyed by non-disabled persons.

## CAUSES OF ACTION

### CLAIM I:   Violations of Title III of the Americans with Disabilities Act

35.     Ms. Gregory incorporates by reference all preceding paragraphs and realleges them in support of this claim.

36.     At all times relevant to this action, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

37.     At all times relevant to this action, Ms. Gregory has been substantially limited in the major life activities of "hearing" and "speaking" and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

38.     Defendant owns, leases, or operates a place of public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(F).

39.     Title III of the ADA provides that no "individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of

7

public accommodation." 42 U.S.C. § 12182(a).

40.    Title III of the ADA defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

41.    Under Title III of the ADA, it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

42.    Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities." 28 C.F.R. § 36.303(c).

43.    Defendant discriminated against Ms. Gregory on the basis of his disability in violation of Title III of the ADA and its implementing regulations.

44.    Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title III of the ADA and its implementing regulations.

45.    Ms. Gregory is entitled to injunctive relief and an award of attorney's fees, costs, and disbursements under the ADA. 42 U.S.C. § 12188(a)(1)–(2); 42 U.S.C. § 2000a-3.

### CLAIM II: Violations of Section 504 of the Rehabilitation Act

46.    Ms. Gregory incorporates by reference all preceding paragraphs and realleges them in support of this claim.

8

47.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

48.     At all times relevant to this action, Ms. Gregory has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9); 42 U.S.C. § 12102(2).

49.     At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance under 29 U.S.C. § 794(b).

50.     Section 504 of the Rehabilitation Act provides that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

51.     Federal regulations implementing the RA "forbid[] a covered entity from "[d]eny[ing] a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance." 28 CFR § 42.503(b)(i).

52.     Defendant discriminated against Ms. Gregory solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 504 of the Rehabilitation Act.

53.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

54.     Ms. Gregory is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss she sustained as a

9

result of Defendant's discriminatory conduct and deliberate indifference under 29 U.S.C. § 794a.

**CLAIM III:**       **Violations of the Patient Protection and Affordable Care Act**

55.     Ms. Gregory incorporates by reference all preceding paragraphs and realleges them in support of this claim.

56.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to Defendant's conduct.

57.     At all times relevant to this action, Ms. Gregory has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

58.     At all times relevant to this action, Ms. Gregory's primary language for communication has been American Sign Language, and he "has a limited ability to read, write, speak, or understand English." 45 C.F.R. § 92.4. She has thus been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act.

59.     At all times relevant to this action, Defendant received federal financial assistance, including Medicare and Medicaid reimbursements, and has been principally engaged in the business of providing health care. Thus, Defendant is a health program or activity receiving federal financial assistance under 42 U.S.C. § 18116(a).

60.     Under Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

*Leiona Colbert Gregory v. Loma Linda University Medical Center* – COMPLAINT

61.     Federal regulations implementing the ACA provide that a "covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201(a).

62.     Federal regulations implementing the ACA provide that (1) a "covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency" and (2) a "covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d)(1)–(2).

63.     Federal regulations implementing the ACA provide that a "covered entity that provides a qualified interpreter for an individual with limited English proficiency through video remote interpreting services in the covered entity's health programs and activities shall provide" (1) "[r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication, (2) a "sharply delineated image that is large enough to display the interpreter's face and the participating individual's face regardless of the individual's body position," (3) a "clear, audible transmission of voices," and (4) "[a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f)(1)–(4).

64.     Federal regulations implementing the ACA provide that a "covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R. § 92.202(a).

*Leiona Colbert Gregory v. Loma Linda University Medical Center* – COMPLAINT

65.    Federal regulations implementing the ACA provide that a "[covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b), *cited by* 45 C.F.R. § 92.202(a).

66.    "In those circumstances where personnel of the [covered] entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a [covered] entity has the burden of proving that compliance with this subpart would result in such alteration or burdens." 28 C.F.R. § 35.164, *cited by* 45 C.F.R. § 92.202(a).

67.    As set forth above, Defendant discriminated against Ms. Gregory on the basis her disability in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

68.    The ACA, by incorporating the enforcement mechanism of the RA, extends a cause of action to Ms. Gregory—that is, "any person aggrieved" by discrimination in violation of the Rehabilitation Act. 42 U.S.C. § 18116(a).

69.    Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

70.    Ms. Gregory is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as alleged under

42 U.S.C. § 18116(a).

## CLAIM IV: Violations of the Unruh Act

71.    Ms. Gregory incorporates by reference all preceding paragraphs and realleges them in support of this claim.

72.    The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

73.    The Unruh Act further provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ. Code § 51(f); *see also* 28 C.F.R. §§ 35.160(b) & 35.164.

74.    Defendant violated the Unruh Act by discriminating against Ms. Gregory through its violation of the ADA.

75.    Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Unruh Act.

76.    Ms. Gregory entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and losses she sustained as a result of Defendant's discriminatory conduct pursuant to Cal. Civ. Code § 52.

77.    Ms. Gregory is further entitled to seek and recover exemplary damages to rectify and deter Defendants' discriminatory conduct as hereinbefore alleged, pursuant to Cal. Civ. Code § 52.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Ms. Gregory respectfully prays that the Court:

13

*Leiona Colbert Gregory v. Loma Linda University Medical Center* – COMPLAINT

A.     Enter a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, and the Unruh Act;

B.     Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals or their companions, meaningful access to and full and equal enjoyment of Defendant's facilities, services, or programs;

C.     Issue an injunction ordering Defendant:

    i.     to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

    ii.     to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

    iii.     to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the Video Remote Interpreting System is not appropriate in all medical situations;

14

*Leiona Colbert Gregory v. Loma Linda University Medical Center* – COMPLAINT

iv.   to develop, implement, promulgate, and comply with a policy to ensure, in the event Defendant use a Video Remote Interpreting System that has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.   to train all their employees, staffs, and other agents on a regular basis about how to properly use a Video Remote Interpreting System, including how to set it up and how to obtain technical assistance in case of system malfunction or failure, and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

vi.   to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

vii.   to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, the ACA, and the Unruh Act.

D.   Award to Plaintiff:

i.   Compensatory damages under the RA, the ACA, and the Unruh Act;

ii.   Statutory or exemplary damages under the Unruh Act;

iii.   Reasonable costs and attorney's fees under the ADA, the RA, the ACA, and the Unruh Act;

iv.   Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v.   Any and all other relief that this Court finds necessary and

15

1

2     appropriate.

3     Dated: March 3, 2021                    Respectfully submitted,

4

5                                             /s/ John K. Buche
                                              John K. Buche (SBN 239477)
6                                             Local Counsel
7                                             BUCHE & ASSOCIATES, P.C.
                                              2029 Century Park East, Suite 400N
8                                             Los Angeles, CA 90067
9                                             Tel: (310) 593-4193
                                              Fax: (858) 430-2426
10                                            E-mail: jbuche@buchelaw.com

11

12

13                                            Andrew Rozynski (seeking pro hac vice)
                                              EISENBERG & BAUM, LLP
14                                            24 Union Square East, Fourth Floor
15                                            New York, NY 10003
                                              Tel: (212) 353-8700
16                                            Fax: (212) 353-1708
17                                            Attorneys for Plaintiff Leiona Colbert
                                              Gregory
18

19

20

21

22

23

24

25

26

27

28

*Leiona Colbert Gregory v. Loma Linda University Medical Center* – COMPLAINT